IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CHRISTOPHER MAYNEZ,**

        **Plaintiff,**

v.                                                                     No. CIV-15-92 WJ/LAM

**CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,**

        **Defendant.**

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 23*) and memorandum brief in support of the motion (*Doc. 24)*, both filed July 15, 2015. On October 8, 2015, Defendant filed a response to the motion (*Doc. 28)*, and, on November 4, 2015, Plaintiff filed a reply (*Doc. 31*). United States District Judge William P. Johnson referred the claims raised in the motion to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 14*]. The Court has reviewed the motion, response, reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 18*]. For the reasons set forth

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

below, the Court recommends that *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 23*) be **GRANTED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED**.

## I.   Procedural History

On March 26, 2011, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB") (*Doc. 18-10 at 2-3*), and, on March 31, 2011, filed an application for Supplemental Security Income (hereinafter "SSI") (*id. at 4-10*), alleging that he became disabled on October 10, 2009.  Plaintiff stated that he became disabled due to:  severe lumbar back pain, back injury, degenerative disk disease, and depression.  [*Doc. 18-11 at 6*].  The applications were denied at the initial level on August 31, 2011 (*Doc. 18-5* at 2 and 16) and at the reconsideration level on February 20, 2012 (*id.* at 30 and 46).  Pursuant to Plaintiff's request (*Doc. 18-6* at 19-21), Administrative Law Judge Michelle K. Lindsay (hereinafter "ALJ") conducted a hearing on October 4, 2013 (*Doc. 18-4* at 2-21).  At the hearing, Plaintiff was represented by counsel and testified.  *Id.* at 4, 6-21.  No vocational expert (hereinafter "VE") appeared or testified at the October 4 hearing and, on November 8, 2013, the ALJ sent vocational interrogatories regarding Plaintiff to Cornelius Ford, a VE.  [*Doc. 18-11* at 67-71].  Plaintiff's counsel subsequently requested a supplemental hearing, which was held before the ALJ on April 10, 2014.  [*Doc. 18-3* at 38-56].  Plaintiff again appeared, represented by counsel, and briefly testified.  *Id.* at 40, 52-53.  VE Thomas A. Greiner was also present and testified.  *Id.* at 42-51, 53-55.

On May 6, 2014, the ALJ issued her decision, finding that under the relevant sections of the Social Security Act Plaintiff was not disabled. [*Doc. 18-3* at 15-25]. On June 6, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision (*id. at 10*), and, on December 11, 2014, the Appeals Council denied Plaintiff's request for review (*id.* at 2-5), which made the ALJ's decision the final decision of the Commissioner. On February 3, 2015, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's

impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."  20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.   *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on February 2, 1977, and was therefore 32 years old on the alleged disability date of October 10, 2009.  [*Doc. 18-4* at 6].   Plaintiff has worked as a delivery person/mover for a furniture company (*id*. at 9), a framer/laborer for a construction company (*id*. at 10), a grocery store bagger/stocker (*id*. at 11), and an outdoor server for a donut seller (*id*.). Plaintiff alleges that he is unable to work because of lower back pain, degenerative disc disease, and depression.   Plaintiff's medical records include:   records dated October 26, 2009 to February 15, 2010 from Alamogordo Orthopaedic & Sports Medicine (*Doc. 18-16* at 2-9); records dated April 8, 2010 to June 2, 2010 from Las Cruces Orthopaedic Associates (*id*. at 10-18); records dated April 27, 2010 to August 31, 2010 from Foothills Medical Center/Rehab and Occupational Medicine (*id*. at 19-46); records dated February 17, 2009 to May 13, 2011 (*Doc. 18-17* at 2-42) and October 11, 2011 to January 9, 2012 (*Doc. 18-18* at 35-49) from The Counseling Center; Psychological Consultative Examination Report dated July 28, 2011 from Mary Ann Cotten, Ph.D. (*id*. at 43-50); Medical Source Statement-Physical dated December 18, 2013 from

Brian P. Delahoussaye, M.D. (*Doc. 18-20* at 24-28); and records for the period January 1, 2012 through July 30, 2013 from Brian P. Delahoussaye, M.D. (*id*. at 2-23).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 10, 2009, the alleged onset date.  [*Doc. 18-3* at 17].  At step two, the ALJ found that Plaintiff has the following severe impairments:  "degenerative disc disease of the lumbar spine; chronic pain syndrome; and adjustment disorder with anxiety."  *Id.*  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  *Id* at 18.  In reaching her determination regarding listed impairments, the ALJ found that Plaintiff has mild restriction of his activities of daily living; moderate difficulty with social functioning; moderate difficulty with concentration, persistence, and pace; and has had no episodes of decompensation of extended duration.  *Id.* at 18-19.  The ALJ therefore concluded that Plaintiff had not satisfied the Paragraph B criteria of listing 12.04.  *Id.* at 19.  The ALJ also found that, as there was no evidence of the Paragraph C criteria, that paragraph was likewise not satisfied.  *Id*.

Before step four, the ALJ determined Plaintiff's RFC, concluding that he has the functional capacity to:

> [P]erform a reduced range of light work . . . [s]pecifically, the [Plaintiff] can lift and/or carry up to 20 pounds on an occasional basis, and up to 10 pounds on a frequent basis; push and/or pull within these same strength limitations; sit for six hours out of the eight-hour workday; and stand and/or walk for six hours in an eight-hour workday.  Additionally, the [Plaintiff] can frequently climb stairs and

ramps; occasionally climb ladders, ropes, or scaffolds; and occasionally stoop. From a mental standpoint, the claimant is limited to understanding, remembering, and carrying out simple instructions; is able to maintain attention and concentration to perform simple tasks for two hours at a time, without requiring redirection to task. He should have only superficial contacts with supervisors and only occasional contact with the general public.

[*Doc. 18-3* at 19-20].

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. [*Doc. 18-3* at 23]. The ALJ based this conclusion on her finding that the demands of Plaintiff's past relevant work, as a home furnishings deliverer, construction laborer, and stocker, exceed his RFC. *Id*. Based on that determination, the ALJ proceeded to step five, where she concluded that Plaintiff would be able to perform the requirements of representative occupations such as garment sorter (DOT[2] 222.687-014), bakery worker/conveyor line (DOT 524.687-022), or electronics worker (DOT 726.687-010). *Id*. at 23-24. Each of these occupations is considered light, unskilled work. *Id*. at 24.

## V. Analysis

Plaintiff contends that "[t]he ALJ erred by discounting [Plaintiff]'s credibility for reasons that have no rational connection to his propensity to tell the truth about his symptoms and for reasons that were not supported by substantial evidence." [*Doc. 24* at 12]. Defendant disputes this contention and argues that "[t]he ALJ reasonably found that Plaintiff was not fully credible." [*Doc. 28* at 12]. Plaintiff states in his reply that the ALJ "repeatedly substituted speculations [regarding Plaintiff's credibility] for evidence," and that even the Federal Rules of Evidence support reversal. [*Doc. 31* at 2-3].

---

[2] **DOT stands for "Dictionary of Occupational Titles."**

### A.  The ALJ's Consideration of Plaintiff's Credibility

In determining Plaintiff's RFC, the ALJ noted that credibility "plays a key role" in that decision, and that she found "reasons to question the [Plaintiff]'s credibility."  [*Doc. 18-3* at 23]. Specifically, the ALJ found that Plaintiff "is not allowed by the Courts to see his children for unspecified reasons," which led her "to believe that he is at the least not a good influence on them." *Id*. The ALJ then found that Plaintiff "has a felonious record for numerous DWI's, which further undermines his credibility.  Nonetheless, his legal history likely makes it difficult to land employment; however, this does not constitute disability."  *Id*.  Earlier in her opinion, however, the ALJ stated that she had "not completely discounted the [Plaintiff]'s subjective allegations of a potentially pain producing impairment," and had therefore found him capable of light, rather than medium, exertional work.  *Id*. at 21.

The issue of credibility is considered to be "peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citations and internal quotation marks omitted). However, it is also the case that credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Id*.  Here, as in *Kepler*, the link between the ALJ's determination that Plaintiff was not credible and the evidence in support of such determination is missing, leaving this Court with nothing but a conclusion.  The ALJ relied on two "facts" in determining that Plaintiff lacked credibility with respect to his reports of the persistence and intensity of his symptoms:   (1) that he was not allowed to see his children; and (2) he had a felonious record of numerous DWIs.  An ALJ's credibility determination

"cannot be based on an intangible or intuitive notion about an individual's credibility," rather, the ALJ's "reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  Soc. Sec. Rep. 96-7p, 1996 WL 374186, at *4.  Here, the evidence to which the ALJ linked her credibility determination of Plaintiff is tenuous, at best.

The ALJ neither closely nor affirmatively linked these supposedly negative credibility factors to substantial evidence as required by *Kepler*, 68 F.3d at 391.  Instead, she simply stated them as conclusive evidence, standing alone, that Plaintiff lacks credibility regarding the severity of his symptoms.  There is no evidence in the record to support such a conclusion.  Neither this Court nor the ALJ knows why Plaintiff was restricted from seeing his children, but it is not likely to have been because he lied about his back pain.  Nor is there any evidence in the record that supports an assumption that a history of DWI convictions is linked to credibility, either generally or with respect to back pain.  In any event, the ALJ ignored the facts that Plaintiff no longer drives, has tested negative for cocaine and twelve other narcotics at least three times, in May 2011 (*Doc. 18-18* at 20), March 2012 (*Doc. 18-19* at 26) and July 2013 (*Doc 18-20* at 4), and admitted that he drinks one six-pack of beer per day (*Doc. 18-4* at 17).  Even more significantly, Plaintiff testified that he is no longer subject to restrictions with respect to visitation with his children. [*Doc. 18-4* at 19].  Therefore, even if these facts were legitimate indicators of a person's veracity regarding their pain levels, they are no longer even accurate.  Moreover, Plaintiff reported these facts without prompting, and made no attempt to minimize his accountability.

Additionally, the ALJ made no effort to develop the facts she considered probative of Plaintiff's credibility in order to determine whether or not they were accurate or indicative of lack

of credibility regarding pain.  Yet, "[w]hen additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make *every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements.*"  Soc. Sec. Rep. 96-7p, 1996 WL 374186, at *3 (emphasis added).  The rationale behind this requirement is that "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone."  *Id*.  Plaintiff was available and testified at two hearings before the ALJ in this case.  He testified about his drug and alcohol issues, including his incarceration for DWI, and also testified that, though he previously had been restricted from seeing his two children, that restriction had been lifted.  [*Doc. 18-4* at 19].  Despite this, the ALJ did not ask Plaintiff any questions regarding the circumstances that led to his restricted access to his children, nor whether Plaintiff's DWI convictions had been felonies or misdemeanors.  Rather, she simply assumed that those factors indicated a generalized lack of credibility, which is precisely the kind of "intangible or intuitive notion about an individual's credibility" that ALJs are expected to avoid.  Soc. Sec. Rep. 96-7p, 1996 WL 374186, at *4.

Sprinkled throughout the ALJ's narrative are other "facts" that, although not expressly the basis for her credibility determination, appear to have influenced her assessment.  Thus, the ALJ noted that, despite Plaintiff's claims of falling, he did not complain of falling to any of his medical providers.  [*Doc. 18-3* at 20].  This statement is not supported by the record.  At the very least, Plaintiff reported to Allan Rickman, M.D. in February 2010 that "if he walks for any distance, he will notice his leg wanting to give out on him."  [*Doc. 18-16* at 4].  Similarly, in a physical

therapy evaluation from May 2010, the therapist noted that "[o]ccasional[ly] L leg would give way, but [Plaintiff] was able to catch himself." [*Doc. 18-18* at 57]. Finally, Plaintiff's mother reported in February 2012 that "[h]e has lost feeling in his legs and has lost b[a]lance. This has happen[e]d at least 2-3 times." [*Doc. 18-11* at 53]. The ALJ also noted that "[d]espite his complaints of excruciating back pain and related symptoms, examinations have been essentially normal." [*Doc. 18-3* at 20]. However, in May 2010, despite a "relatively normal" discogram, Paul Saiz, M.D. recommended Plaintiff be placed on "permanent restrictions," noting that his "Darvocet is no longer effective, so I am going to go ahead and increase his medications to Hydrocodone. I have a feeling that he will be on medications for a long period of time so pain management will be required." [*Doc. 18-16* at 13]. Moreover, the most recent imaging test of Plaintiff's spine, a lumbar CT scan done in January 2012, found "[a]t L5-S1, 4 mm AP right central disc osteophyte complex narrows the subarticular zones, right and left. There is contact of the descending right S1 nerve root. Moderate-severe right foraminal narrowing with encroachment of the exiting right L5 foraminal nerve segment. Mild left foraminal narrowing." [*Doc. 18-19* at 36]. If the ALJ considered this to be a "relatively normal" result, she probably should have discussed it. Additionally, in June 2011, Plaintiff's primary care physician, Dr. Delahoussaye, noted that Plaintiff did not show evidence of "exaggerated pain behavior," despite Dr. Delahoussaye's concerns about Plaintiff's substance abuse issues. [*Doc. 18-18* at 8]. Dr. Delahoussaye's records contain the same notation from other visits with Plaintiff, including May 2011 (*id*. at 11), September 2011 (*id*. at 5), March 2012 (*Doc. 18-19* at 32), May 2012 (*id.* at 12), November 2012 (*id.* at 6), and July 2013 (*Doc. 18-20* at 8). Finally, in both March and

April 2012, Dr. Delahoussaye treated Plaintiff with lumbar epidural blocks, a fairly invasive procedure that suggests that Plaintiff's treating physician took his pain claims seriously.  *See* [*Doc. 18-19* at 16-27].

The ALJ also noted that Plaintiff's "pain is not as severe as he claims" based on there being "no indication in questionnaires completed by the claimant, that he sought any medical attention while incarcerated [for eight months], other than for alcohol abuse."  [*Doc. 18-3* at 21].  In fact, there is no evidence whatsoever regarding treatments that may have been sought by, or available to, Plaintiff while he was incarcerated, and also no indication of whether Plaintiff was able to lie down at will during that time.  Again, the ALJ specifically did not ask Plaintiff whether or not he had requested or received medical attention while incarcerated, which constitutes a failure to "make every reasonable effort" to elicit information regarding a claimant's credibility, as required by Soc. Sec. Rep. 96-7p.  Suffice it to say that an ALJ may not use the non-existence of evidence of a fact to declare a claimant "not credible" without at least asking him whether or not her assumptions of the facts are valid.[3]

---

[3] **The ALJ also considered that Plaintiff "has not had any real mental health treatment" as an indication that his claims regarding pain interfering with "his ability to concentrate and persist at tasks, as well as socialize on a sustained basis" were not credible.  [*Doc. 18-3* at 21].  How Plaintiff's failure to seek mental health treatment for physical pain that distracts him and saps his energy can be considered evidence that the pain itself is not real is difficult to discern, however.  If such a connection may be made, it should be more fully detailed on remand.**

In any event, "[p]ain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (citations omitted). Thus:

> [T]he absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations. By requiring consideration of evidence other than objective medical data, Congress recognized that the severity of pain is inherently subjective. A relatively expansive interpretation of "consistent" or "reasonably expected" is the only logical reading of [42 U.S.C. § 423(d)(5)(A)], because a more restrictive reading would render meaningless that part of it requiring consideration of all evidence. If objective medical evidence must establish that severe pain exists, subjective testimony serves no purpose at all. A proper reading of the statute appropriately recognizes that two patients with the same impairment may be affected to totally differing degrees.

*Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987). The ALJ's conclusion that Plaintiff was not credible in his subjective reports of pain was not "closely and affirmatively linked to substantial evidence." As pain is clearly a subjective experience, its existence and degree depend, in large part, on the claimant's credibility. In this case, the ALJ did not properly assess Plaintiff's credibility under the law. This case is therefore remanded for additional consideration of the credibility issue.

## VI.   Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that *Plaintiff's Motion to Reverse or Remand to Administrative Agency (Doc. 23)* be **GRANTED** as set forth above, and the decision of the Commissioner be **REMANDED** for further proceedings consistent with this opinion.

_____
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**